STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO.: CUMSC-2026-_____
                                        PORSC - CV-2026-233

HILARY GRISHAM GOODWILL,
JONATHAN GOODWILL,

        Plaintiffs,                     **COMPLAINT AND DEMAND**
                                        **FOR JURY TRIAL**

        v.

WILLIAM E. "BILL" GOODWILL,

        Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiffs Hilary Grisham and Jonathan Goodwill ("***Plaintiffs***") file this Complaint against William E. Goodwill a/k/a Bill Goodwill ("***Defendant***") alleging the following:

### I.  INTRODUCTION

1.      This Complaint arises from recent discovery of records revealing a campaign of financial exploitation, conversion, fraud, and unjust enrichment perpetuated by illicit acts of manipulation, misrepresentation, concealment, and unauthorized use and occupancy of real property. The parties include siblings, but the illegal misconduct and damages alleged gravely exceed the practical limits of a routine family quarrel.

2.      Requests seeking compromise have been ignored or sidetracked, and this action is now necessary in response to discovery of the extreme nature and scope of Defendant's sustained course of self-dealing and misconduct concealed by acts of coercion, undue influence, and manipulation.

REC'D CUMB CLERKS OF(
MAY 29 '26 PM 12:02

1

EXHIBIT
3

## II. BACKGROUND

3.     Plaintiffs acquired, maintained, and funded a residential home in Harrison, Maine (the "*Maine Residence*") to provide a source of safety, stability, and comfort for the sole benefit of Plaintiff Jonathan Goodwill's mother (the "*Widowed Parent*") who has faced significant financial hardships since the sudden and unexpected death of her lifelong husband.

4.     Defendant entered the Maine Residence without permission.  He inhabited and remained in the property for consecutive years until relocating to Mesa, Arizona in 2023.

5.     During his term of unauthorized occupancy, Defendant claimed to be destitute and unable to contribute to rent, property and utility costs, or ordinary living expenses. Defendant's lifestyle and personal pursuits imposed extraordinary increases in household costs and expenses, most if not all incurred by Plaintiffs.

6.     Plaintiffs recently discovered documents verifying Defendant's misappropriation of Plaintiffs' personal and marital properties and finances for personal interests and enrichment including misuse of monthly stipends contributed for sole purpose of subsidizing the Widowed Parent's living costs.

7.     Plaintiffs have also learned that Defendant intentionally concealed existence of exorbitant personal financial holdings, assets, and earnings while exploiting Plaintiffs' property under false pretenses of being destitute, hopeless, and incapable of supporting himself.

8.     Plaintiffs allege that Defendant coerced and manipulated the Widowed Parent by usurping control of financial accounts, documents, and records from the Maine Residence. Examples include (i) Defendant's recent urgency rearranging finances and bank accounts; and (ii) Defendant's theft of financial and family records from the Maine Residence during overnight hours in secrecy, thereby concealing and misappropriating documentation of Plaintiffs' property and family assets.

2

9.      Recent forensic investigations by a third-party security agency disclosed covert surveillance devices installed, maintained, and operating within private areas of the Maine Residence, including devices with links to Defendant and remote servers previously unknown to Plaintiffs.

10.     Since illegally intruding upon the Maine Residence, Defendant has unlawfully taken and retained money, records, property, proceeds, and benefits that in equity and good conscience belong to Plaintiffs, and this justifies preservation pending adjudication on the merits.

11.     Plaintiffs seek compensatory and punitive damages, restitution, and disgorgement; remedies in accordance with an accounting, appropriate financial subpoenas, and return of records; equitable relief in forms of a constructive trust, security interests according to equitable liens, and attachments as permitted by law; and reimbursements for costs, interest, diminution, and attorney's fees.

### III.  PARTIES

12.     Plaintiff Hilary Grisham Goodwill is the legal spouse of Plaintiff Jonathan Goodwill. She has contributed marital, personal, family, beneficiary, and legacy assets and proceeds affected by the alleged wrongdoings and has been directly harmed by Defendant's misconduct.

13.     Plaintiff Jonathan Goodwill is an individual and spouse of Plaintiff Hilary Grisham Goodwill. He is the full brother and sole sibling of Defendant and the son of the Widowed Parent. He has been directly harmed by Defendant's conversion, misappropriation, and misuse of marital funds, personal assets, family property, and financial records, including interference with estate properties and the Maine Residence acquired for his mother's welfare.

14.     Defendant William E. Goodwill a/k/a Bill Goodwill is an adult in his mid-forties. Defendant occupied Plaintiffs' Maine Residence until approximately 2023 before purchasing

3

private property in Arizona for personal occupation and use. He continues to intrude upon Maine Residence as referenced herein.

## IV. JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 4 M.R.S. § 105 and 14 M.R.S. § 6051. This Court also has jurisdiction over specific civil claims with authority to grant equitable relief under 5 M.R.S. § 152.

16.    This Court has personal jurisdiction over Defendant under 14 M.R.S. § 704-A based on claims arising from conduct in Maine, use and occupation of Maine real property, alleged tortious activities occurring in Maine, and unresolved consequences in Maine.

17.    Venue is proper because substantial acts, omissions, and injuries occurred in this County and a nexus of records, financial institutions, property, witnesses, and sources of requested equitable relief subject of this action are located in and connected to this County.

## V. JURY TRIAL REQUESTED

18.    Plaintiffs request a jury trial on all claims and issues as permitted.

## VI. FACTUAL BACKGROUND

19.    Plaintiffs are a legally married couple. During all relevant times, they remained unable to cohabit the Maine Residence due to full-time professional obligations with employers based elsewhere.

20.    In recent years, Plaintiffs have allocated and contributed marital and personal funds and resources to acquire, improve, maintain, and preserve the Maine Residence for the Widowed Parent's well-being.

21.    The purpose in establishing the Maine Residence was specific and limited. Plaintiffs purchased and supported the home so the Widowed Parent could live in safety with dignity after the sudden and unexpected death of her husband.

22.    Defendant intruded and occupied the Maine Residence under pretext of visiting and assisting the Widowed Parent. Plaintiffs never consented to Defendant remaining as a full-time occupant or using the property as a personal base of operations.

23.    When Plaintiff Jonathan Goodwill objected to Defendant's occupancy, Defendant insisted he was destitute, incapable of earning, and cognitively impaired, therefore unable to pay rent, contribute to household expenses, or afford personal living costs. These representations were material and induced Plaintiffs to budget, source, and allocate additional funds as means for interim support in maintaining stability at the Residential Property.

24.    Plaintiffs repeatedly sought contributions, rent, explanations, receipts, or documentation in response to escalating household expenses. Defendant refused, deflected responsibility to the Widowed Parent, or cited anomalies associated with weather, utilities, repairs, medical circumstances, or unexpected circumstances as justifications.

25.    Plaintiffs' efforts to limit or withdraw support were frustrated by Defendant's actual or threatened acts of property damage, claims of victimization, narcissistic appeals, claims of intent to commit suicide or engage in self-harm, and fabricated complications preventing discourse on reasonable boundaries.

26.    As result of Defendant's illegal occupancy, household costs escalated far beyond expectations. Defendant illegally used the residence, utilities, Internet service, appliances, equipment, storage, fixtures, and improvements for his own purposes and without Plaintiffs' permission. He upgraded Internet service, used computer equipment, and, upon information and belief, engaged in commercial cryptocurrency mining, software development, investment activity, or related ventures while Plaintiffs were overextended by household expenses.

27.    Defendant's conduct caused a necessity to increase or replenish monthly funds intended for the Widowed Parent, incur loans, liquidate or divest assets, contribute personal and

marital property, thereby losing benefits of earnings, interest, equity, real property use, and investment opportunities.

28.     Throughout his time illegally occupying the Maine Residence, Defendant claimed need for interim financial support to afford basic needs, medical expenses, or increased costs of living. Plaintiffs furnished such support using marital funds based on necessity, but have since discovered certain funds diverted, used, and retained for Defendant's personal and commercial pursuits.

29.     Defendant enjoyed a lavish personal lifestyle and lucrative pursuits by misappropriating funds and marital property contributed and entrusted for the Widowed Parent's benefit in in paying household expenditures. Review of recently discovered records confirms that Defendant diverted funds and marital property to his personal accounts in secrecy without authorization and redirected contributions to household support to subsidize his personal living costs and reimburse his personal living expenses.

30.     In addition to covert instances of theft, Defendant also used false misrepresentations, selective narratives, and manipulative tactics to induce transfers of marital funds to his personal accounts. Such tactics increased in frequency over time, often with false claims of being destitute, incapable of earning, and without opportunity or resources, with certain events presented as urgencies or crises marked by plans detailing intent to commit suicide or engage in self-harm.

31.     While illegally occupying the Maine Residence, Defendant intentionally caused damage to the residence and personal property, including purposeful destruction of fixtures, cabinetry, family heirlooms, and Plaintiffs' personal property.

32.     In response to Defendant's interference, the Widowed Parent expressed stress, aggression, and pressure presented by Defendant's behaviors and demands. Based on

6

information and belief, Defendant was refusing to clean up after himself, disabling heating units in the Widowed Parent's bedroom, and taking funds from the Widowed Parent's social security earnings and Plaintiffs' household expense allocations to pay personal credit card bills.

33.    In approximately 2022, Defendant expressed interest in relocating to Arizona.

34.    Since relocating to Arizona, Defendant continues to intrude upon the Maine Residence, often arriving without notice and interfering with property in the home.

35.    In approximately May of 2024, Plaintiffs received notice referencing financial assets and holdings including earnings accumulated by Defendant while occupying the Maine Residence. The notice prompted Plaintiffs to commence an independent review of Defendant's finances and activities, a process constrained by complex webs of holdings, entity structures, pass-through accounts, private royalties, investment holdings, and cryptocurrency transactions.

36.    Revelations to date demonstrate that Defendant had substantial personal wealth and means while intruding and occupying the Maine Residence. Records discovered in recent months drastically contradict Defendant's repeated rhetoric claiming destitution, incapacity, and inability to support himself. For instance, Defendant's relocation to Arizona included purchasing a home in an exclusive gated community valued in excess of $350,000 (the "*Arizona Property*")– an acquisition funded by an all-cash transaction.

37.    Upon information and belief, the Defendant's Arizona residence was purchased using funds illegally taken from Plaintiffs, including contributions of marital property entrusted for sole purposes of ensuring the Widowed Parent's welfare.

38.    Based on information, belief, and investigation, Defendant exploited the Maine Residence by using it as an expense-free platform to accumulate, enhance, and retain extensive personal assets, earnings, and investments including earnings and profits derived from

commercial cryptocurrency ventures, software development and licensing, and other proprietary holdings while imposing collective liabilities, business costs, and living expenses upon Plaintiffs.

39.     Defendant's recent actions and statements have demonstrated fraudulent intent, proactive concealment, manipulative motives, and misplaced entitlement to benefits unearned. As examples, Defendant has reacted to Plaintiffs' ongoing inquiries by (i) visiting the Maine Residence in the middle of the night and loading a luxury SUV with boxes of files and records including financial archives and family estate documents; (ii) dismissing Plaintiffs as having been "so stupid" for supporting him financially; (iii) confirming that marital property was expended for cryptocurrency mining activities at the Maine Residence including monthly electric bills exceeding $3,000; and (iv) defending refusal to reimburse Plaintiffs as impossible due to his personal assets being "all tied up in investments".

40.     Defendant strategically scheduled a recent return visit to Maine for the specific purpose of attending meetings with executives and agents of local financial institutions and insisted that the Widowed Parent accompany him to each appointment. Upon information and belief, Defendant coerced the Widowed Parent to sign documents upon arriving at each meeting, and in each instance ordered the Widowed Parent to wait outside in a rental car while he met with bank personnel privately for nearly an hour. Communications pursuant to these meetings reflect a flurry of financial restructuring including account consolidations, transfers, closures, disbursements, and related activities.

41.     Upon information and belief, Defendant exercised undue influence over the Widowed Parent in connection with financial accounts, transfers, comingling, disbursements, signatures, records, and institutional filings during and after his intrusive occupancy at the Maine Residence.

8

42.     In November 2025, Plaintiffs discovered a covert electronic network within or associated with the structure and grounds of the Maine Residence. Plaintiffs' Internet service provider confirmed the suspicious network had been installed by a separate provider and recommended an investigation.

43.     Forensic analysts hired by Plaintiffs identified covert equipment and activity consistent with network intrusion, data harvesting, physical and digital tracking, and audiovisual transmission, including devices customized for intrusive and interceptive purposes.

**44.**     Plaintiffs have repeatedly sought explanation, accounting, compromise, return of property, and reasonable resolution of this dispute.  Defendant has refused, ignored, denied, or distorted the issues. Plaintiffs have no choice but to initiate this legal proceeding.


## VII. CAUSES OF ACTION

### Count I: Conversion, Misappropriation, and Financial Fraud

45.     Plaintiffs repeat and reallege the foregoing paragraphs.

46.     Defendant intentionally misrepresented and concealed existence of personal assets, income, earnings, and savings, his misappropriation and misuse of household funds, family and estate properties, and marital property, and his ability to reimburse and contribute to using, maintaining, and inhabiting the Maine Residence.  He also expressly misrepresented use of utilities, equipment, records, and personal property while illegally occupying the Maine Residence.

47.     Plaintiffs reasonably relied on Defendant's misrepresentations and omissions because each was presented as dire need for personal welfare during a period of existing family hardship.  In addition, Defendant's requests for support also presented risks to the Widowed

Parent's welfare if ignored, with purported urgencies reinforced by direct and specific threats, physical outbursts, plans of self-harm, emotional coercion, and concealment.

48. Defendant converted, misappropriated, or wrongfully retained funds and property belonging to Plaintiffs, including funds intended for the Widowed Parent's support, marital assets, and personal assets including inheritance or legacy assets of the sister-in-law Plaintiff.

49. Defendant's illicit and intentional taking and misuse of Plaintiffs' funds and property for personal interests has generated earnings, proceeds, and benefits that would not have been acquired, enhanced, or retained by Defendant otherwise. Defendant continues to retain and enjoy benefits from Plaintiffs' funds and property, including but not limited to lucrative investment opportunities, real estate holdings, equity earnings, and recreational pursuits.

50. Defendant requested and accepted Plaintiffs' financial support as interim assistance for specific needs and used them for self-interest in pursuing personal gains.

51. Defendant illicitly usurped control of and misused Plaintiffs' personal and marital property entrusted solely for purposes subsidizing housing and living expenses for the Widowed Parent's benefit and welfare. Defendant's misconduct included unauthorized access and transfers of funds directly deposited to household accounts from Plaintiffs' bi-weekly earnings and subject to fiduciary obligations.

52. At the time of each incident of conversion or misappropriation by Defendant, Plaintiffs held and had the immediate right to possess all legal, equitable, marital, beneficial, and/or possessory rights to the property and funds taken, transferred, retained, comingled, concealed, and fraudulently taken by Defendant.

53. Defendant knew or had sufficient notice that Plaintiffs' offerings of temporary support required interim contributions of marital and personal properties, and on multiple occasions was expressly informed of the source of such funds including withdrawals, loans,

distributions, and liquidations executed in response to fabricated urgencies and false pretenses expressed by Defendant to justify purported needs and lack of personal means.

54.    Defendant's misconduct has directly deprived Plaintiffs and their marital estate of substantial property and interests, including future interests enjoyed by Defendant through retention.  Recent discovery of records verifying Defendant's extensive acts of concealment and manipulation confirm all claims herein are actionable and justify comprehensive accruals and equitable relief under 14 M.R.S. § 859 and related grounds.

55.    Defendant's conduct was willful, knowing, malicious, and demonstrates blatant disregard for Plaintiffs' personal liberties, fruits of labor, and enjoyment of earnings, personal assets, and marital property interests. Plaintiffs are entitled to compensatory damages, restitution, disgorgement, prejudgment interest, costs, punitive damages where available, and all other relief permitted by law.

### Count II: Wrongful Occupancy; Trespass and Damage to Real Property

56.    Plaintiffs repeat and reallege the foregoing paragraphs.

57.    Defendant occupied and used the Maine residence without Plaintiffs' informed consent and refused to pay fair rental value or contribute to costs of living, household items, taxes, insurance, storage, appliances, equipment, or essentials such as electricity, water, communications, Internet, heating, and costs reasonably attributable to his occupancy and use.

58.    Defendant's possession, use, and claimed entitlement interfered with Plaintiffs' right to control the property, the intended purpose support the Widowed Parent's welfare and peaceful enjoyment, and Plaintiffs' ability to budget, preserve, improve, sell, rent, refinance, or otherwise enjoy the residence.

11

59.    Defendant also intentionally damaged the premises and interfered with personal property, including kitchen cabinetry and fixtures, heirlooms, records, and valuables. Defendant's misconduct presents actionable claims for trespass, waste, property damage, and unjust enrichment, including recovery for depreciation.

60.    Defendant received benefits from Plaintiffs, was notified and aware of the benefits enjoyed, and exploited and retained these benefits so extensively that retention without repayment is inequitable. Circumstances demonstrate wrongful possession and misuse by a disseizor and support mense profit compensation for unjust enrichment under 14 M.R.S. § 725 and recovery under 14 M.R.S. § 6952.

61.    Plaintiffs are entitled to the fair value of occupancy, use, enjoyment, and compensation for costs and expenses for rent, utilities, maintenance, repairs, equipment, services, essentials, taxes, and insurance attributable to the term of occupancy with consideration for carrying costs, consequential losses, and other amounts proven at trial.

<u>Count III: Undue Influence, Coercion, Abuse;</u>
<u>Interference with Family and Beneficial Property</u>

62.    Plaintiffs repeat and reallege the foregoing paragraphs.

63.    Defendant exploited family relationships, physical presence, claimed need, emotional pressure, threats of self-harm, and cohabitation with the Widowed Parent, for the sole purpose of usurping control over information and access to obtain money, signatures, account access, records, property, silence, and continued benefits from Plaintiffs and the Widowed Parent.

64.    Defendant shared living quarters with the Widowed Parent, and this cohabitation presumes confidentiality and fiduciary obligations in defining prohibited conduct constituting undue influence under 33 M.R.S. § 1022(I).

65.     Defendant's misconduct was so extreme as to assert premise and impressions of dominion of control over the Maine Residence, usurping trust and influence to illicitly access to records, transportation, communications, and financial institutions, and misused this control to pressure, isolate, and take unfair advantage of the Widowed Parent.

66.     Any transfer, account change, signature, withdrawal, record removal, designation, authorization, or other property benefit procured by Defendant from the Widowed Parent, Plaintiffs, or any family account through domination, unfair persuasion, concealment, or lack of independent advice is voidable, subject to rescission, an accounting, and disgorgement.

67.     To the extent transfers of money or personal property involving the Widowed Parent benefited Defendant or was comparably imbalanced, Plaintiffs plead statutory presumptions afforded by 33 M.R.S. § 1022 in addition to common-law undue influence principles.

68.     Defendant's manipulative and coercive conduct damaged Plaintiffs by diverting funds and records, consequently impairing a support structure designed for the Widowed Parent's welfare, frustrating Plaintiffs' beneficial and family-property interests, interfering with ownership and allocation of assets, and presenting need for judicial intervention to identify, preserve, reclaim, and restore property rights.

69.     Defendant's wrongful acquisition, use, and retention of marital property enabled or supplemented Defendant's opportunities to acquire, hold, enhance, and retained personal properties, including personal properties subject to superior rights and interests of the marital property as misused. By converting or misappropriating marital property for ill-gotten gains, Defendant has personal property and assets in his possession or control that would not have been acquired or held but for misuse of marital property.

70.     Plaintiffs seek Court intervention by means of injunctions, preservation orders, or subpoenas to financial institutions in the interest of determining allocation and use of marital property possessed and retained by Defendant.

71.     Based on information, belief, and prior acts, it is likely that Defendant will continue to transfer or conceal funds and assets unless a constructive trust is imposed. Imposition is fair and equitable as between the parties in view of Defendant's misappropriation and misuse of Plaintiffs' property, Plaintiff expectations to enjoy joint control over community property, and Defendant's prior knowledge of the source of the funds.

72.     Plaintiffs respectfully request a Court order to set aside all transfers of marital community property as assets acquired by means of deception and subsequently converted, misappropriated, or retained for ill-gotten gains without consent or authorization of the marital union.

73.     Plaintiffs seek interim establishment of a constructive trust because ownership of marital community property has been interfered with and misused without consent or authorization, including property that was wrongfully acquired, diverted, and retained by means of fraud and acts of undue influence.  Defendant is not entitled to ownership of marital assets wrongfully obtained, possessed, and retained.  Plaintiffs, as rightful owners of marital property, assets, and earnings wrongfully held by Defendant, respectfully request imposition of a constructive trust for preservation on behalf of their marital interests with Defendant's holding all respective property and assets in restricted capacity as constructive trustee for the benefit of Plaintiffs.

74.     Plaintiffs request further relief as practicable and appropriate, including by means of granting security interest by means of equitable liens and other remedies deemed appropriate.

Count IV: Misappropriation, Concealment, and Theft of Records

75.     Plaintiffs repeat and reallege the foregoing paragraphs.

76.     Defendant removed, concealed, retained, destroyed, altered, or refused to disclose records, including financial records, banking records, investment records, cryptocurrency or digital-asset records, utility and Internet records, property records, family records, estate or trust-related records, account authorizations, correspondence, devices, storage media, and other documents necessary to trace ownership, funds, transfers, and liability.  Defendant has ignored and failed to comply with requests for return of records issued on behalf of Plaintiffs and the Elder Parent's interests.

77.     Defendant's control over such records enabled full access and authority to direct accounts, transactions, assets, transfers, and benefits at issue. Plaintiffs cannot fully calculate damages or trace property without an accounting and production of records.

78.     Defendant's removing, altering, transforming, concealing or retaining household, family, and estate records, including physical files and financial entity accounts, demonstrates exploitation and intent to prevent or avoid disclosure.

79.     Equity supports an accounting where a party controls financial information, property, or records and where legal damages cannot be calculated without disclosure. The Maine Superior Court has equitable jurisdiction under 14 M.R.S. § 6051, and trust, fiduciary, and estate-related accountings are recognized in Maine law, including by 18-C M.R.S. § 7-202 where applicable to fiduciary accounts.

80.     Plaintiffs seek an order requiring Defendant to preserve, identify, return, and account for all records and assets within his possession, custody, or control, including records removed from the Maine residence, records concerning the Widowed Parent, records concerning

15

family accounts, records concerning Plaintiffs' funds, records of cryptocurrency or digital assets, and records concerning the Arizona Property and any accounts used to acquire or maintain it.

Count V: Invasion of Privacy; Intrusion Upon Seclusion

81.     Plaintiffs repeat and reallege the foregoing paragraphs.

82.     Plaintiffs have lived with reasonable expectations for privacy in the Maine Residence and its interior spaces when engaging in dialogue, communications, and professional activities including when using and accessing devices, networks, records or attending to personal matters and private family affairs.

83.     Defendant had no authority to install, maintain, or use covert monitoring, recording, or transmission devices in the Maine residence, and was never invited or permitted to access, record, monitor, transmit, or intercept data, information, or audiovisual content within or on the premises of the Maine Residence.

84.     Based on information and belief, Defendant intentionally intruded upon Plaintiffs' private affairs by procuring, installing, activating, and maintaining covert audiovisual transmission devices, activity monitors, or related technology, and invaded personal privacy by accessing, observing, intercepting, recording, transmitting, or attempting to access private information.

85.     Intentional privacy violations, including installation or use of surveillance devices in private residences without consent, are actionable as unlawful interceptions, unauthorized disclosures, and misuse of private communications under 17-A M.R.S. § 511 and 15 M.R.S. §§ 710-711.

86.     Personal privacy violations impose upon fundamental rights, and epitomize levels of extreme misconduct causing emotional distress, disruption to personal comforts and

livelihood, and intrusion upon seclusion and serenity. Corrective actions require investments in investigative and security services to secure one's privacy and preclude further intrusions, unauthorized disclosures, and abuse. Plaintiffs seek punitive damages, compensation, and real damages to the extent feasible, with understanding that traumas inflicted by these wrongs may be impossible to relieve. Plaintiffs also request consideration for injunctive relief, access, deletion or return of unlawfully obtained data, and any statutory or common law remedies available to address contemporary motives.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests relief from this Court as follows:

A. *On the First Cause of Action (Count I)*: Awarding of compensatory damages to recover money and benefits that in equity belong to Plaintiffs in good faith, including:

1. Amounts believed to be at least (a) $150,000 designated for household costs and expenses; (b) at least $70,000 diverted to Defendant's personal ventures; (c) at least $225,000 in property or expectancy-related interests of Plaintiff Jonathan Goodwill, and (d) at least $250,000 in property, proceeds, or legacy interests of the sister-in-law Plaintiff, subject to proof, tracing, amendment, and accounting; and

2. Relief and recovery according to relative measures of diminution, interest, and profits based on evidence and amounts to be established at trial.

B. On the Second Cause of Action (Count II): Recovery for reasonable and fair value of illegal occupation, use, and enjoyment of the Maine

17

Residence, compensation for damages to fixtures and personal property within the Maine Residence, and restitution for depreciation during occupancy, such amounts to be determined at trial and believed to reasonably exceed $180,000;

C.  On the Third Cause of Action (Count III): Court intervention and determinations in the form of injunctions, preservation orders, subpoenas to financial institutions, imposition of a Constructive Trust to address unjust enrichment, grant of security interest in Plaintiff's favor by means of equitable liens, and Court ordered restitution in forms of compensation or the return of all marital property taken and all profits derived from Defendant's possession and retention;

D.  On the Fourth Cause of Action (Count IV): Court Orders for preservation, accountings, and disclosures of misappropriated and concealed records as necessary to determine damages, losses, and unjust enrichment;

E.  On the Fifth Cause of Action (Count V): Relief from harms in forms of general, statutory, punitive, and compensatory damages deemed appropriate; and

F.  Interests, costs, attorney's fees where authorized, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** Plaintiffs Hilary Grisham and Jonathan Goodwill request that this Court enter judgment in their favor and against Defendant Bill Goodwill for:

1. Damages in amounts specified in Section VII, supra;

2. Pre-judgment and post-judgment interest as allowed by law;

3. Costs of this action; and

4. Such other and further relief as this Court deems just and proper.

Dated: May 29, 2026

Respectfully Submitted,

Signature: 
Name: Hilary Grisham Goodwill
Address: 37 Waterford Road, Harrison ME 04040
Phone:  (732) 207-2313

Signature: 
Name: Jonathan Goodwill
Address: 37 Waterford Road, Harrison ME 04040
Phone:  (203) 300-2625